# Notice of Objection

18-2881

## 1 Relevant Procedural History

The following objection is requested due to ineffective counsel that occurred on April 3, 2019. The counsel for the plaintiff Timothy Kolman falsified the rights to the plaintiff Mr. Ismail in order to force him to accept an agreement of $50K on over $200K in financial damages incurred since 2015 (not including non-financial damages such as emotional distress etc). The falsification of rights were as follows:

1. Mr. Kolman informed Mr. Ismail that the most he could get in court was $50K which was the settlement he negotiated ($35K unemployment months, $15K emotional damages). Mr. Ismail asked if there is any more value he could get in trial and Mr. Kolman said "no". Even if Mr. Ismail was awarded $50K in court, just as in the settlement, Mr. Kolman left out that Mr. Ismail would then be eligible to recover legal fees which are not included in the agreement. By withholding this information, Mr. Kolman mislead Mr. Ismail out of 40% of the value of his case. Mr. Kolman would later try to confuse the matter by claiming that Mr. Ismail was aware of legal fees by citing the representation agreement. However, the representation agreement only specifies that "In the Event" legal fees are recovered, they would go to cover the 40% legal fee in the agreement. At no point in the agreement did it ever say that Mr. Ismail had to go to trial and win in order to recover legal fees. Even if it did, the fine print of a document signed a year earlier is superseded by Mr. Kolman's legal counsel that day informing him of the opposite. Furthermore, the legal representation agreement states that in the event of "judgment" or "decision", Mr. Ismail would get to recover legal fees. Technically, a judgment/decision was made when the magistrate Judge Henry Perkins issued the $50K offer to both parties. Therefore, by the language of Mr. Kolman's representation agreement, Mr. Ismail should be awarded legal fees (which he was not). A lawyer was needed to inform Mr. Ismail in good faith of his legal rights and Mr. Kolman betrayed that trust to force an early settlement.

2. Mr. Kolman informed Mr. Ismail that only the backpay for the months of unemployment totaling $35K were recoverable and the rest of the $200K damages were inadmissible. Based on this legal counsel from Mr. Kolman, there was no logical choice but to settle since going to court and winning would have resulted in less recoverable damages than the $50K settlement.

3. Mr. Kolman informed Mr. Ismail that requesting accountability from the defendant was not a valid request.

Since Mr. Ismail believed the above statements by Mr. Kolman to be true, Mr. Ismail had no logical reason to pursue a trial and made the only logical decision which was to accept the settlement. Mr. Ismail trusted that Mr. Kolman was an honest lawyer and had correctly informed him about his rights. However, Mr. Ismail felt that it made no sense that of over $200K in damages, he was only eligible for $35K. Mr. Kolman explained to him that the "law is a blunt instrument". Reluctantly, Mr. Ismail agreed to trust Mr. Kolman's legal counsel and verbally agreed to a settlement. Upon leaving the courthouse on April 3, Mr. Ismail followed up with independent legal counsel to verify that the information that Mr. Kolman told him was correct. It was not. Mr. Ismail learned that if he went to trial, he would only then recover his legal fees of 40%. Mr. Ismail then also learned that the rest of the $200K in damages (such as salary difference, psychiatrist expenses, medication expenses, relocation expenses, job search etc) were eligible for recovery. Lastly, Mr. Ismail learned that as part of the settlement, anything can be requested such as accountability for the harassing manager. Mr. Ismail then

FILED
JUL 0 3 2019
KATE BARKMAN, Clerk
By_____ Dep. Clerk

learned that Mr. Kolman, as some other lawyers who earn 40% contingency, want to settle the case regardless of value so they do not have to do the legwork of trial even if it means less money. This motive becomes clearer when you consider that the representation agreement requires the lawyer to pay all legal costs. Mr. Ismail also learned that day that Mr. Kolman's law firm was in financial disarray as his law partner had just left the firm exposing him to financial problems. While that explains why Mr. Kolman was strongly pushing this settlement, it does not excuse him to lie to his clients who depend on him for their legal rights to force them to accept an agreement. Within three (3) hours of leaving the courthouse on April 3, Mr. Ismail emailed Mr. Kolman confronting him about his multiple lies mentioned above and informed him that he would not sign the agreement due to those lies and instructed Mr. Kolman not to pursue the agreement anymore. The email is attached. Mr. Kolman ignored Mr. Ismail's request and continued to work with the defense counsel to draft and sign the agreement and continued to pressure Mr. Ismail that he had no choice but to sign the agreement. This alone proves Mr. Kolman's unethical behavior towards his clients by ignoring their demands and pursuing the opposite. When Mr. Ismail continued to refuse to sign the agreement, Mr. Kolman filed a joint motion with defense counsel to enforce agreement.

## 2. June 3rd Enforcement Decision

Per Judge Henry Perkins decision/discussion:.

1. Judge Perkins states that Plantiff had enough time to discuss the matter with his lawyer and that he understood his rights and the agreement. Mr. Ismail did based on the counsel of Mr. Kolman. As Mr. Ismail has shown above, Mr. Kolman's counsel was fraudulent to force a quick settlement. Therefore, this cannot be used against him to enforce the agreement. Agreements made based on lies and fraudulent information should not be upheld.

2. Judge Perkins states that Mr. Ismail has a case of "buyers remorse" because he believes since the case is strong, he should have settled for more. This is NOT correct at all. It is not a matter of having a strong case, it is a matter of being aware of recoverable damages and fees under the law. Mr. Ismail wanted to go to trial but Mr. Kolman made it clear there was no financial value in going to trial since the settlement is already the most he would get. Mr. Ismail had no logical choice but to agree to the settlement since Mr. Kolman lied about his recoverable damages and fees. There are $200+K in financial damages that need to be recovered to break even. Buyers remorse happens in regards to emotional damages where the plaintiff might feel regret for undervaluing that amount since it is not an independently verifiable number. Mr. Ismail NEVER asked for emotional damages as part of the $200K. Mr. Ismail just wanted to break even financially for incurred financial damages. The rest of the $200K consist of salary difference (16K/yr), psychiatrist expenses, medication expenses, relocation expenses, job search etc. This value is not based on the strength of a case but what is recoverable by law! If you or any judge can tell Mr. Ismail that these damages are not recoverable under law, then the agreement should be upheld because Mr. Kolman's legal counsel was correct. However, since no lawyer can say this because it is not true, then the settlement was achieved through fraud and should be dismissed. Mr. Perkins states that he was not aware of any fraudulent inducements to enter this agreement. This clearly is not true.

3. Judge Perkins states that Mr. Ismail reviewed the settlement agreement during the June 3rd hearing and had no dispute with the terms of the agreement. That is not true. Plaintiff only reviewed the Kolman legal representation agreement during the June 3rd hearing, not the settlement agreement.

4. Judge Perkins states that no dispute over the terms of the settlement agreement. That is not true. There are several. For example: in the settlement agreement section 6.2, Defendant claims that all wages, benefits, hours etc have been paid. This is not true. Mr. Ismail has not been reimbursed for travel expenses associated with work done for Interstate resources at Savannah, Georgia. Mr. Ismail also has not been payed out his benefits such as vacation time. Section 6.2 is just one point of dispute in the agreement. There are several disputes with the agreement.

5. The agreement itself allows for revocation of the agreement for any reason. Even if the agreement is signed/enforced, Mr. Ismail reserves the right to revoke the agreement within 21 days and proceed with legal action against defendant. Thereby enforcing agreement will not end this complaint.

6. Judge Perkins claims "buyer's remorse" and "second thoughts" as the explanation for Mr. Ismail's decision not to sign the agreement. Those conditions happen when a buyer has the same set of facts/rights before and after the transaction. This is not the case. Furthermore, "buyer's remorse" and "second thoughts" are emotional, not logical, decisions made after some time (days, weeks etc) has passed since agreeing to the transaction. In this case, the decision was purely made based on recoverable damages, not emotion, that occurred within 3 hours after court and learning about his rights from unbiased sources. "Buyer's remorse" and "second thoughts" are not applicable here.

7. Judge Perkins claims that he was unaware of $200K damages. He claims Mr. Ismail's settlement demand was $150K. Mr. Ismail NEVER issued or was aware of $150K demand. This is another example of Mr. Kolman's misrepresentation of Mr. Ismail to undervalue this case for a quick settlement. Documentation and emails sent to Mr. Kolman show the damages of over $200K.

**Summary**

Mr. Ismail gladly stands behind the decision making process of the settlement agreement. If Mr. Kolman's legal counsel is correct, if only the unemployed months are recoverable, Mr. Ismail will gladly sign the agreement. However, if there are additional legally recoverable damages such as salary difference, psychiatrist expenses, medication expenses, relocation expenses, job search etc (which make up more than 75% of the financial losses incurred by Mr. Ismail), then the agreement was achieved through fraudulent/ineffective counsel and should be voided. Mr. Ismail begs the court for a chance to have his case and damages resolved in GOOD FAITH without fraudulent/ineffective counsel.

Sincerely,

Hesham Ismail

## Judge Recommendation Rejection

**Hesham Ismail**
Wed 4/3/2019 7:20 PM
To: tkolman@kolmanlaw.net <tkolman@kolmanlaw.net>

Tim,

During my drive back, i spoke with a few friends/lawyers about their feedback in regards to what happened today. They informed me of 2 things that if true, you did not communicate to me. First, they said that when you win a case in court, the legal fees are covered by Interstate. When you and the judge told me today that $50K was the best i would get in court based on his experience and that this is what he was recommending, he failed to mention that the $50K in court is in addition to the other side paying your legal fees. The legal fees being 40% is a huge difference. Had i known this, i would have wanted to continue to go to court because i would make 40% more. Secondly, they informed me that some evidence is inadmissible in a court, not damages request. The point of the legal system is for both sides to present their case including damages and the jury to decide. Things are inadmissible if they are not fair. There is no reason $160K work of actual damages would be "inadmissible" for being unfair. The jury decides what damages to award. Furthermore, according to you and the Judge today, you said that $50K was a middle point where "both sides were equally unhappy". However, you also later on said that i was only eligible for $35K in damages. If so, the middle point should be $17K, not $50K. Clearly, there is something wrong with these numbers. If $50K is the midpoint, then the damages i am legally entitled to are more like $100K, not $35K. Now that i have finally had time to myself to consider all the facts including things i was not aware of during today's session, the Judge's recommendation is not in my best interest. Please notify Interstate to not draft any agreement as i will not sign it. I want my day in court and a fair shot at $200K in actual financial damages so far (not including future damages, emotional distress, legal fees, relocation, job search expenses etc). Even if worst case scenario I only get the $35K in backpay in court, i still end up with more money than this $50K deal due to Interstate covering legal fees. Most importantly, i want a decision from a court so that it will be much harder for Chady to keep his job.

Hesham