IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HESHAM ISMAIL** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 18-2881** |
| | : | |
| **DS SMITH HOLDINGS, INC., et al.** | : | |

**MEMORANDUM**

**SCHMEHL, J.** /s/ JLS                                                     **DECEMBER 19, 2019**

      Plaintiff brought this action, claiming his four-month period of employment was terminated by the Defendant because of his religion (Muslim) in violation of Title VII of the Civil Rights Act of 1964 (Title VII) and the Pennsylvania Human Relations Act.[1] The Court referred this matter to United States Magistrate Judge Henry S. Perkin for the purpose of conducting a settlement conference. On April 3, 2019, the Magistrate Judge conducted a settlement conference, at the conclusion of which the parties reached a settlement. The Magistrate Judge put the settlement agreement on the record and questioned the Plaintiff concerning the terms and conditions of the settlement. The Magistrate Judge then issued an Order under Rule 41.1(b) dismissing the case with prejudice, but retaining jurisdiction for a period of 90 days from that date for purposes of enforcing the settlement.

      After Plaintiff refused to sign a written version of the settlement agreement that was drafted by Defense counsel and approved by Plaintiff's counsel, counsel for the

---

[1] After Plaintiff was terminated by Defendant, he was hired by Dominion Energy, Inc. Following his termination from Dominion Energy, Inc., Plaintiff filed a Title VII lawsuit against Dominion Energy, Inc. once again claiming that he was terminated because of his religion as well as his race and national origin. *Ismail v. Dominion Energy, Inc.,* C.A. 19-1093 (E.D. Pa. 2019).

1

Plaintiff and counsel for Defendant made a joint request by letter that the terms of the settlement agreement be enforced. [ECF 30.] On June 3, 2019, the Magistrate Judge held a hearing on Counsel's joint request to enforce the settlement agreement. On June 19, 2019, Magistrate Judge Perkin issued a Report and Recommendation recommending that "the settlement agreement . . . be enforced upon its terms whether the plaintiff signs the agreement or continues to refuse to do so." [ECF 36, p. 9.] On July 3, 2019, Plaintiff filed a *pro se* Notice of Objection to the Magistrate Judge's Report. [ECF 40.] On November 22, 2019[2], the Court held an evidentiary hearing on Plaintiff's Objections. For the reasons that follow, the Court will deny the Objections and adopt the Magistrate Judge's Report and Recommendation in its entirety.

When objections to a report and recommendation have been filed under 28 U.S.C. § 636(b)(1)(C), the district court must make a *de novo* review of those portions of the report to which specific objections are made. 28 U.S.C. § 636(b)(1)(C); *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). "District Courts, however, are not required to make any separate findings or conclusions when reviewing a Magistrate Judge's recommendation *de novo* under 28 U.S.C. § 636(b)." *Hill v. Barnacle*, 655 F. App'x. 142, 147 (3d Cir. 2016). The "court may accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report. 28 U.S.C. § 636(b)(1)(C).

In His Notice of Objection, Plaintiff contends that the settlement agreement should be voided because he never signed the written agreement and because he was

---

[2] The delay in scheduling this matter was due to the fact that on June 25, 2019, Plaintiff filed a *pro se* Appeal from the Magistrate Judge's Order [ECF 37] and this Court had to wait for the Third Circuit Court of Appeals to issue a certified Order returning jurisdiction to this Court [ECF 44.]

**2**

not fully advised by his counsel prior to entering into the agreement as to the full amount of damages he was eligible to recover if he was victorious at trial "such as salary difference, psychiatrist expenses, medication expenses, relocation expenses, job search etc (which make up more than 75% of the financial losses incurred by Mr. Ismail)" as well as counsel fees. [ECF 40.] Indeed, Plaintiff has attached to his Objection a copy of an email he sent to his former counsel three hours after he left the courthouse on April 3, 2019 that memorializes his concerns. Apparently, Plaintiff's counsel did not respond to this email. Plaintiff raised these same concerns during his testimony before this Court on November 22, 2019.

During the settlement hearing on April 3, 2019, the following exchange took place:

```
THE COURT: The settlement amount is $50,000, inclusive of
all claims for counsel fees and costs, all in. That's the
number for all of those claims. Am I correct, Mr. Kolman?

MR. KOLMAN: Yes, you are, Your Honor.

THE COURT: Okay. And Ms. Kaye, am I correct as
well?

MS. KAYE: Yes, Your Honor.

THE COURT: All right. Let me inquire of Mr. Ismail.
Thank you for being here. You and I have spent some time
together today, and I appreciate your assistance and your
openness. Do you understand that once this sum is paid,
that will be all the money that you can obtain from the
Defendants, and each one of them in this case, this will
release all claims against all of them; do you understand
that, sir?

MR. HESHAM ISMAIL: Yes.

THE COURT: Do you understand that you will not be
able to go back and sue them for not only the claims you've
raised in this case, but any claims that you may not have
```

> raised and think you may wish to raise? In other words, a
> general release will release all those claims that you may
> or could have potentially had; do you understand that as
> well?
>
> MR. ISMAIL: Yes.
>
> THE COURT: All right. Have you had adequate time to
> discuss this matter with your counsel, Mr. Kolman?
>
> MR. ISMAIL: Yes.
>
> THE COURT: And you believe that you've been well
> represented by him in this matter?
>
> MR. ISMAIL: Yes.
>
> THE COURT: I agree with that as well. Do you
> understand also that the--once the $50,000 is paid, that
> includes all costs and counsel fees, you would not be
> entitled to go and make a separate application to the Court
> for reimbursement of those expenses?
>
> MR. ISMAIL: Yes.
>
> THE COURT: All right. Do you have any questions concerning
> the terms of settlement?
>
> MR. ISMAIL: No.
>
> THE COURT: Do you agree to these terms of
> settlement?
>
> MR. ISMAIL: Yes.

(ECF 45, pp. 5-7.)

In his Report and Recommendation, the Magistrate Judge noted that at the June 3, 2019 hearing, Plaintiff testified that: he believed his case was worth at least $200,000; he believed his lawyer pushed him to settle for a significantly lesser amount "so that he could make 40% of the agreed upon number without doing much work" and that he believed that his attorney "incorrectly told him that he would not be able to get

4

future damages and would only get back pay and that he would not be able to have counsel fees awarded in this case;" [ECF 36 p.3.]

The Magistrate Judge further noted that Plaintiff testified that immediately after the April 3, 2019 settlement conference, he spoke with two of his friends who are criminal lawyers about the settlement. The Magistrate Judge noted that, according to Plaintiff's testimony, these two criminal lawyers informed Plaintiff that he was not properly advised by his counsel and that he had settled for too low of a figure. The Magistrate Judge stated in his Report and Recommendation that Plaintiff admitted that these two lawyers did not practice employment law and that they would not be representing him if the settlement was set aside.

The Magistrate Judge also noted, however, that Plaintiff acknowledged that at the April 3, 2019 hearing he agreed to the terms of the settlement and that the amount of the settlement was inclusive of counsel fees and costs. The Magistrate Judge also noted that Plaintiff acknowledged that he had admitted at the April 3, 2019 hearing that he had adequate time to speak with his attorney during the settlement conference and that he agreed that he was well represented by his counsel.

The Magistrate Judge concluded that all of the elements of a contract were present----offer, acceptance and consideration. The Magistrate Judge stated that, after hearing Plaintiff's testimony, he was "not aware of any fraudulent inducement to enter into the agreement." [ECF 36, p.8.] The Magistrate Judge stated that "[s]imply changing your mind, even after speaking with another attorney, is not grounds or cause to set the settlement aside." [*Id.*]

5

Both federal and state courts in Pennsylvania encourage settlement agreements as a way to resolve disputes relatively amicably and lighten the load of litigation before the courts. *See, e.g., D.R. v. E. Brunswick Bd. of Educ.*, 109 F.3d 896, 901 (3d Cir. 1997) (citing *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 213-15 (1994)); *Orta v. Con-Way Transp.*, Civ. A. No. 02-1673, 2002 WL 31262063, at *2 (E.D. Pa. Oct. 8, 2002); *Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick*, 587 A.2d 1346, 1348 (Pa. 1991). This is especially true in Title VII cases. *See Dent v. St. Louis-San Francisco Ry. Co.*, 406 F.2d 399, 402 (5th Cir. 1969) ("Thus it is quite apparent that the basic philosophy of these statutory provisions is that voluntary compliance is preferable to court action and that efforts should be made to resolve these employment rights by conciliation both before and after court action."); *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 498 (5th Cir. 1968) ("It is thus clear that there is great emphasis in Title VII on private settlement and the elimination of unfair practices without litigation.").

A district court has "inherent authority to enforce agreements settling litigation before it." *New Castle County v. U.S. Fire Ins. Co.*, 728 F. Supp. 318, 319 (D. Del. 1989) (citing *Bowater N. Am. Corp. v. Murray Mach., Inc.*, 773 F.2d 71, 76-77 (6th Cir.1985)); *see also Hobbs & Co. v. Am. Investors Mgmt., Inc.*, 576 F.2d 29, 33 (3d Cir. 1978). Provided that the evidence demonstrates that the parties reached an agreement, a district court can enforce the terms agreed upon by the parties. *See Williams v. Metzler*, 132 F.3d 937, 946 (3d Cir. 1997) (noting that basic contract rules apply to settlement); *Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd.*, 739 A.2d 133, 136 (Pa. 1999). Moreover, settlements need not be reduced to writing to be enforceable. *See, e.g., Beazer E., Inc. v. Mead Corp.*, 412 F.3d 429, 436-37 (3d Cir.

2005); *Orta*, 2002 WL 31262063, at *1.

The record reveals that Magistrate Judge Perkin went to great lengths to reach a fair settlement of this matter, and to ensure that Plaintiff understood and accepted all of the terms of the settlement agreement. The settlement conference lasted for four hours with the Magistrate Judge conducting "shuttle diplomacy" by meeting with each side individually and advising each side of the strengths and weaknesses of their respective case. It appears that Plaintiff was given every opportunity to consult with his counsel outside the presence of both Magistrate Judge Perkin and Defense counsel and that Plaintiff in fact did so.

The Court agrees with the Magistrate Judge that the record is clear that the parties orally agreed upon all material terms of the settlement contract and expressed their assent to all terms of the contract, on the record, in court, on April 3, 2019. Clearly, the Plaintiff's attorney had actual authority to bind him to the terms of the settlement as his agent.

It simply is immaterial that when the Settlement Agreement was ultimately presented to Plaintiff for his signature, he refused to sign it. *See Suber v. Peterson*, Civ. A. No. 04-1896, 2006 WL 1582312, *2-*4 (E.D. Pa. June 2, 2006) (plaintiff expressly authorized her attorney to enter into settlement and plaintiff bound to that agreement even though settlement never reduced to writing). *See Reed v. American Foods Equip. Co.*, No. 92-5057, 1994 U.S. Dist. LEXIS 3114, at *2 (E.D. Pa. 1994) (citing *Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970)) ("An agreement to settle a lawsuit, voluntarily entered into is binding upon the parties, whether or not made in the presence of the Court and even in the absence of a writing."); *see also Glass v. Rock*

*Island Refining Corp.*, 788 F.2d 450 (7th Cir. 1986) (upholding oral settlement agreement in Title VII case where plaintiff entered into oral settlement then changed his mind and wanted to withdraw); *Lyles v. Commercial Lovelace Motor Freight, Inc.*, 684 F.2d 501, 504 (7th Cir. 1982) (under federal law, oral settlements are enforceable.) Therefore, Plaintiff is bound to the terms he and his attorney agreed upon at the settlement conference even though he never signed the Settlement Agreement.

As to Plaintiff's claim that he was fraudulently induced by his attorney into entering the settlement agreement, "[a] party will not be released from a poor litigation decision made because of inaccurate information or advice, even if provided by an attorney. [Plaintiff's] decision to accept the offer was deliberate and independent. In such situations, regret caused by new knowledge does not justify rescinding a decision." *Latshaw v. Trainer Wortham & Co.*, 452 F. 3d 1097, 1101-1102 (9th Cir. 2006). (The plaintiff-appellant requested Rule 60(b)(6) relief from a judgment resulting from her acceptance of an offer of judgment under Federal Rule of Civil Procedure 68.); see also *Qiang Wang v. Palo Alto Networks, Inc.*, 686 Fed. Appx. 890, 894–95 (Fed. Cir. 2017) (refusing to vacate settlement agreement where the plaintiff claimed it was based on erroneous legal advice); *Steart v. Allen County Jail*, 2018 WL 3238552 (N.D. Ind. 2018). In short, any fraudulent inducement by an attorney the Plaintiff selected and hired does not alter the settlement agreement between Plaintiff and Defendant, since it is not the opposition who is alleged to have committed the fraud, but the Plaintiff's own lawyer.

Many individual plaintiffs fail to realize there are two parts to any jury trial---liability and damages. This means that in order for Plaintiff to have even been eligible to

recover the extra damages and fees he claimed he was entitled to, he would first had to have convinced a jury that Defendant was "in the wrong" and therefore liable to Plaintiff. *Only after finding Defendant liable* would the jury even get to consider awarding any damages to Plaintiff. Plaintiff's counsel no doubt factored in the risk of a jury finding no liability on the part of Defendant in recommending that Plaintiff settle for the sum of $50,000. Indeed, the Magistrate Judge noted in his Report and Recommendation that there was a "significant" risk of a defense verdict in this matter. [ECF 36, p. 8.] Under these circumstances, it is highly unlikely that Defendant would have offered to settle this case for more than $50,000. The defense clearly would have tried the case before offering the Plaintiff any more than that amount. Also, a jury in this case could have easily rendered a defense verdict, leaving Plaintiff with no recovery at all.

In sum, the parties entered into a valid oral agreement. Additionally, the fact that the Plaintiff refused to sign the written agreement is immaterial. Any alleged material misrepresentations or omissions made by prior counsel which Plaintiff claims fraudulently induced him into agreeing to the settlement can be addressed by him in a separate action against his attorney and agent. The settlement agreement shall be enforced.